## Geiges v. Rosko

*George Luskus,* for plaintiff.
*Joseph J. Scafidi,* for defendant.

KELTON, *J.,* February 4, 1987 — In these companion cases, defendant, Thomas Rosko, Bucks County Coroner, has filed a motion for judgment on the pleadings alleging that he is immune from suit as a government official. Plaintiffs, Dolores Geiges and Louis E. Cavacini, each individually filed separate suits seeking recovery in trespass against multiple defendants, including Dr. Rosko. Plaintiffs allege that Dr. Rosko, his agents and the other defendants negligently mishandled the remains of plaintiffs' deceased son (also named Louis Cavacini). Dr. Rosko has denied negligence. As a result of the alleged misconduct, plaintiffs allege that they suffered serious emotional distress which remains unabated despite medical intervention.

Defendant Rosko initially filed preliminary objections asserting inter alia the affirmative defense of governmental immunity. The objections were denied with leave to file a responsive pleading. Defendant then reasserted immunity as new matter in his answer and has moved for judgment on the pleadings in both cases. Defendant argues he is entitled to immunity based first upon his common law status as a public official, and second upon the statutory immunity granted under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541, et seq.

For the reasons which follow, we deny Dr. Rosko's motion for judgment on the pleadings.

The pleadings allege the folowing facts: On September 9, 1985, Louis Cavacini Jr., was found dead in his Croydon, Bucks County apartment. At the direction of defendant Rosko, the remains were taken to the morgue of St. Mary's Hospital in nearby Langhorne, Pa. Due to the suspicious circum-

stances of young Cavacini's death, the coroner's office appointed a medical examiner to perform an autopsy. This individual examined the remains on September 11, 1985, and then directed they be transferred to the Ciaverelli Funeral Home in Ambler, Pa., where the autopsy would be performed. The body was held in the St. Mary's morgue until September 12, 1985.

Plaintiff alleges that on September 12, 1985, an employee-driver of Ciavarelli Funeral Home, acting within the scope of his employment, and at the express direction of his employer, arrived at St. Mary's to retrieve decedent's remains. The driver negligently and recklessly departed with the wrong body, specifically that of an elderly autopsied male whose identity was unknown to plaintiff. Later that day, an employee-driver of the Rogers Funeral Home in Trenton, N.J., also acting within the scope of his employment, and at the express direction of his employer, arrived at St. Mary's in quest of the remains of elderly decedent. This employee likewise left with the wrong body, in this case that of Mr. Cavacini, whose remains arrived in Trenton later that afternoon. The Rogers Funeral Home never discovered their error, and on September 12, 1985, instructed the Greenwood Cemetery in Trenton, N.J., to cremate what they believed to be the remains of the other male. Mr. Cavacini's remains were, in fact, cremated without permission from either plaintiff or any other member of decedent's immediate family. Furthermore, the scheduled autopsy was never performed.

Although Dr. Rosko claims common law immunity based on his status as a "high public official, "we believe that the immunity issue is more easily resolved at least at the judgment on the pleadings stage through an analysis of the Political Subdivi-

sion Tort Claims Act, 42 Pa.C.S. §8541, et seq. We find that this act immunizes county coroners generally from tort liability. Section 8541 provides that:

"No local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency *or an employee thereof.*" (emphasis supplied) Thus, the question posed is whether the defendant falls within the definition of either a "local agency'" or "an employee thereof." Section 8501 defines these terms as follows:

" 'Local agency' — A government unit other than the commonwealth government. The term includes an intermediate unit."

" 'Employee' — Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman *and any elected or appointed officer,* member of a governing body or other person designated to act for the government unit." (emphasis supplied)

In our view, defendant is clearly entitled to general protection under the act. The coroner's office falls squarely within the definition of a "local agency" and the coroner, *an elected officer,* is an "employee" of that agency.

Immunity, however, is not absolute. Under section 8542(a), liability may be imposed on the agency or its employee (under section 8545) if (1) damages would have been recoverable under common law if the injuries had been caused by a person without immunity *and* (2) the instant injury had been caused by the negligent acts of the local agency or by an employee acting within the scope of his office.

Once the conditions of granting immunity under

section 8542(a) are satisfied, however, it is also necessary to determine if any of the special exceptions to immunity in section 8542(b)(2) are triggered. Most notable herein is section 8542(b)(2) which provides as follows:

"(b)(2) *Care, custody or control of personal property* — The care, custody or control of personal property of others in the possession or control of the local agency.. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency."

We believe there is an issue of fact as to whether Mr. Cavacini's remains were in the "care, custody or control" of the defendant. The defendant had directed removal of the body to St. Mary's morgue and had ordered performance of an autopsy. The more difficult question is whether a decedent's remains fall within the statutory definition of "personal property."

On the question of whether remains are "personal property," Pennsylvania law has long recognized the special rights of the next of kin regarding a decedent's remains. See *Leschey v. Leschey*, 374 Pa. 350, 97 A.2d 784 (1953); *Ronick v. Lynn*, 23 D.&C. 3d 456 (1982); *Stevens v. Ganz*, 49 D.&C. 2d 283 (1970); *Petition of Kopechne*, 47 D.&C. 2d 579 (1969); *Miller v. New Holland Cemetery Association*, 14 D.&C. 2d 735 (1958). These rights include custody of the body (*Leschey, supra*), control of the burial (*Miller, supra*) and the right to contest an exhumation and/or autopsy, *Commonwealth v. Marshall*, 287 Pa. 512, 135 Atl. 301 (1926). We are faced with deciding whether these rights rise to the level of a property right. Although early common law recognized no property rights in the body of the

deceased person, most jurisdictions have modified this rule. See *O'Donnell v. Slack,* 123 Cal. 285, 55 P. 906 (1899); *Burney v. Children's Hospital,* 169 Mass. 57, 47 NE 401 (1897); *Doxtator v. Chicago & W. M. R. Co.,* 120 Mich. 596, 79 NW 922 (1899); *Nichols v. Central Vermont R. Co.,* 94 Vt. 14, 109 A. 905 (1919); *Pettigrew v. Pettigrew,* 207 Pa. 313, 56 Atl. 878 (1904). This line of cases recognizes a quasi property right in a decedent's remains vesting in the nearest relatives of the deceased and arising out of their duty to bury their dead. The Pennsylvania Supreme Court in *Pettigrew, supra,* found a property right in a corpse "subject to a trust and limited in its rights to such exercise as shall be in conformity with the duty out of which the rights arise." Given this ruling, there can be no doubt that the next of kin have a property right in the remains of their son. Therefore, if the foregoing facts were proven *at* trial, section 8542(b)(2) of the Tort Claims Act would prevent Dr. Rosko from defending on the basis of governmental immunity. We therefore enter the following

## ORDER

And now, February 4, 1987, defendant's motion for judgment on the pleadings is denied.