## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-027

Filing Date: March 15, 2021

No. A-1-CA-37827

ELIZABETH WALLBRO, Personal
Representative of the ESTATE OF
MARY Y.C. HAN, Deceased,

      Petitioner-Appellee/Cross-Appellant,

v.

KURT NOLTE, M.D., in his
official capacity as Chief Medical
Investigator of the Office of the
Medical Investigator,

      Respondent-Appellant/Cross-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Certiorari Granted, April 19, 2022, No. S-1-SC-38773. Released for Publication June 21, 2022.

Serra & Garrity, P.C.
Diane Garrity
Santa Fe, NM

Vega Lynn Law Offices, LLC
Rosario D. Vega Lynn
Albuquerque, NM

for Appellee

Melendres & Melendres, P.C.
Paul Melendres
Linda Melendres
Albuquerque, NM

for Appellant

## OPINION

**MEDINA, Judge.**

**{1}** In these consolidated appeals, Kurt Nolte, M.D., in his official capacity as Chief Medical Investigator of the Office of the Medical Investigator (Respondent) appeals the district court's grant of a writ of mandamus directing Respondent to amend its manner of death determination on a death certificate for decedent Mary Y.C. Han (Han). Elizabeth Wallbro (Petitioner), sister and personal representative of the Estate of Han (Han Estate), appeals the district court's denial of attorney fees pursuant to the issuance of the writ of mandamus. We reverse the district court's grant of a writ of mandamus and affirm its denial of attorney fees.

**BACKGROUND**

**{2}** In November 2010, personnel from the Albuquerque Fire Department and officers of the Albuquerque Police Department (APD) responded to a call and located the body of Han in the driver's seat of a vehicle inside the garage of her home. After securing the garage, officers entered the house to ensure no other individuals were inside and immediately noticed strong vehicle exhaust fumes throughout.

**{3}** The officers then spoke with Paul Kennedy who discovered Han inside her vehicle and was still at the scene when they arrived. After speaking with Mr. Kennedy, Officers took a visual inventory of the scene and then called a field investigator[1] and Respondent. Before the field investigator or Respondent arrived on scene, two other officers arrived and began walking through the house and garage. More individuals—including high ranking APD officers and civilians—arrived throughout the course of the field investigation. In total, approximately fifty to sixty officers and civilians were on scene and moving between the house and garage during Respondent's investigation.

**{4}** After completing its field investigation, Respondent conducted an autopsy and concluded that Han's manner of death was suicide caused by inhalation of carbon monoxide in the enclosed garage. On December 23, 2010, Dr. Ross Reichard, the forensic pathologist who performed Han's autopsy, certified that "[on] the basis of examination and/or investigation, in [his] opinion," the manner of Han's death was suicide. Wallbro, acting as personal representative of the Han Estate, disputed Respondent's manner of death determination and filed a petition for a writ of mandamus requesting in part and in the alternative that the district court:

   A. Issue a writ of mandamus requiring [Respondent] to conduct a proper, fair, impartial and complete investigation into the cause and manner of the death of . . . Han;

   B. Order that the cause and manner of death of . . . Han be reopened, reexamined and reevaluated

---

1Field investigators specialize in documentation and collection of evidence including taking photos and processing the scene for fingerprints.

. . . . [or]

    D. Order that the death certificate be amended to "undetermined" as the manner of the death of . . . Han.

**{5}** The district court did not issue a writ. Instead, the court issued a summons. Respondent in turn filed a motion to dismiss asserting that Petitioner failed to demonstrate "(1) . . . standing to bring this action; (2) [that] Respondent has a clear legal duty to perform what is requested; (3) the performance sought is ministerial and not discretionary; and (4) a writ is an appropriate remedy." Petitioner filed a response to the motion to dismiss and Respondent filed a reply.

**{6}** The district court denied Respondent's motion to dismiss, finding that: (1) "Petitioner does not have a plain, speedy and adequate remedy in law"; (2) "Petitioner is beneficially interested based on the allegations contained in the [w]rit"; and (3) "there exists a material question and a mixed question of law and fact as to what . . . Respondent's discretionary acts are as raised in the [p]etition."

**{7}** Respondent subsequently filed a motion for summary judgment, asserting that mandamus cannot lie because there were no material issues of fact in dispute regarding the discretionary nature of the relief sought by Petitioner. The district court denied the motion, and in its order stated that questions regarding the nature of Respondent's duty and whether there exists an adequate remedy of law were issues of fact for trial. The district court further stated that Petitioner's experts' opinions on Respondent's protocols and whether the protocols were followed during Han's autopsy were also disputed issues of fact for trial.

**{8}** The district court held two evidentiary hearings on the petition. The purpose of the first hearing was to determine whether Respondent's "actions or duties raised in the [p]etition [were] mandatory and/or ministerial or whether they [were] discretionary." Six witnesses testified during the first hearing including Dr. Werner Spitz, Dr. David Williams, Dr. Kris Sperry, Dr. Ross Zumwalt, Dr. R. Ross Reichard by deposition, and Respondent.

**{9}** Petitioner presented the testimony of Dr. Spitz, who was accepted as an expert in forensic pathology. Dr. Spitz testified that the word "opinion" in the certified statement on Han's death certificate meant that it was "the opinion of the person that sign[ed] this document . . . what he or she believed, to the best of their knowledge, based on ground rules, medical and forensic, to be the cause and manner of death." Dr. Spitz noted that there were deficits in the investigation such that, in his opinion, Han's manner of death should have been classified as undetermined. Of great significance to Dr. Spitz was Respondent's failure to collect and analyze Han's computer.[2] According to Dr. Spitz, "many times" people leave suicide notes or other information on their computers.

---

2At the scene, Mr. Kennedy described the laptop as his firm's property and asked for its return. At the direction of Deputy Chief Banks, an officer handed the computer to Mr. Kennedy who walked away with it.

**{10}** Dr. Williams testified as an expert in emergency medicine and carbon monoxide toxicity as it applies to the clinical analysis of a manner or cause of death; he conceded, however, that he lacked the credentials to offer an opinion as to autopsy procedure. Dr. Williams explained why, after meeting with Respondent, he made a formal appeal of the Office of the Medical Investigator's (OMI's) findings in this case. Specifically, he stated that he found it odd that the autopsy did not reveal tissue or organ damage given the level of carbon dioxide in Han's system. Dr. Williams also described an instance in which he identified the manner of death on a death certificate as accidental and natural and affirmed that he refused OMI's request to delete "accidental" because it was his medical opinion that both applied. In addition, he confirmed that he would refuse a judicial directive to change a manner of death determination if it was inconsistent with his opinion.

**{11}** Dr. Sperry, accepted by the district court as an expert in forensic pathology, disagreed with OMI's determination of Han's manner of death. Specifically, Dr. Sperry took issue with deficits in the investigation such as the lack of investigation into Han's computer. He explained that forensic pathology relies on parallel investigations to garner information beyond what is found through autopsy and toxicology. Still, Dr. Sperry agreed that a forensic pathologist must use discretion when determining manner of death and that cause and manner of death are statements of opinion.

**{12}** In addition to the experts testifying at trial, the deposition testimony of Dr. Reichard was admitted as an exhibit. Dr. Reichard testified that he performed Han's autopsy and that his determination of suicide as the manner of death was a matter of opinion rendered to a reasonable degree of medical certainty.

**{13}** At the conclusion of the first hearing, the district court entered an order in which it concluded in part that Petitioner is a beneficially interested party because the estate has a quasi-due process right in Han's body;[3] consistent with its regulations, Respondent had a nondiscretionary duty to issue a death certificate for the cause and manner of a person's death; and "[a]t the very least [Respondent] has a ministerial duty to correctly analyze and determine the cause of death based on alleged facts of death." Having found that Respondent's determination of manner of death is a ministerial act, the district court held a second hearing to determine whether Respondent determined the manner of death in accordance with its ministerial duties.

**{14}** During the second hearing, APD officers described the investigative scene and testified that members of the public as well as other high ranking APD and city officials inundated the scene. Testimony revealed that some evidence was not collected during the investigation and that the scene was otherwise compromised.

---

[3]The district court relied on *Geiges v. Rosko*, 49 Pa. D. & C.3d 61 (Pa. Com. Pl. 1987). In *Geiges*, the Pennsylvania court acknowledged, "the special rights of the next of kin regarding a decedent's remains. These rights include custody of the body, control of the burial and the right to contest an exhumation and/or autopsy." *Id*. at *65 (citations omitted).

**{15}** Based on the evidence at both hearings, the district court concluded that Respondent acted arbitrarily and capriciously and not in accordance with law because substantial evidence did not support its conclusion as to manner of death and therefore Respondent abused his discretion. In concluding that Respondent's determination of manner of death is a ministerial act, the district court relied on NMSA 1978, Section 24-14-21(A) (1981), of the Vital Statistics Act to find that Respondent had a duty to "apply the facts surrounding the death of Ms. Han in a manner and in accordance with evidentiary requirements." The district court then found that the spoliation of evidence at the scene impacted Respondent's ability to satisfy the evidentiary requirement of Section 24-14-21(A).[4] The district court applied the standard of review for administrative decisions and found that Respondent abused its discretion because "its conclusions of manner of death lacks foundation, a reasonable basis in fact, and is arbitrary and capricious."[5] Having found that Respondent's manner of death determination was arbitrary and capricious, the district court ruled that "[a]pplication of [m]andamus is appropriate due to the fact that a clear abuse of discretion has occurred." The district court ultimately determined that because of the evidentiary issues raised, "only a conclusion of 'undetermined' is factually and legally supported."

**{16}** Consequently, the district court issued a peremptory writ of mandamus directing Respondent to "amend the [d]eath certificate for . . . Han to change the manner of death from 'suicide' to 'undetermined' " and denied Petitioner's request for attorney fees. Respondent and Petitioner each filed separate appeals, which we consolidated.

## DISCUSSION

**{17}** Whether the district court appropriately granted the writ of mandamus directing Respondent to amend the death certificate informs our review of Petitioner's appeal of the denial of attorney fees. For this reason we first evaluate the propriety of the writ of mandamus and then the district court's denial of attorney fees.

### Mandamus

**{18}** Mandamus proceedings are technical in nature and strictly regulated by statute. *See Kerpan v. Sandoval Cnty. Dist. Att'ys Off.*, 1988-NMCA-007, ¶ 6, 106 N.M. 764, 750 P.2d 464 (observing that "[m]andamus proceedings are technical in nature"). The statutes regulating mandamus proceedings can be found at NMSA 1978, Sections 44-2-1 to -14 (1884, as amended through 1899). *See* § 44-2-1 (stating that a "writ of mandamus is regulated as prescribed [by Chapter 44, Article 2]"). Section 44-2-5

---

4Section 24-14-21(A) states that "[t]he certificate shall be registered subject to evidentiary requirements as prescribed by regulation to substantiate the alleged facts of death." However, applicable sections of the New Mexico Administrative Code do not set out specific evidentiary requirements. *See* 7.3.2.11 to .13 NMAC.

5As we understand the record, the district court applied its whole record review in part to determine whether Respondent relied on sufficient evidence to overcome a presumption against suicide articulated in *Solorzano v. Bristow*, 2004-NMCA-136, ¶ 10, 136 N.M. 658, 103 P.3d 582. In *Solorzano* this Court considered suicide as a defense to a wrongful death claim. *Id.* ¶ 14. In that context this Court held that suicide should be treated as an affirmative defense requiring some proof of intent. *Id.*

provides that a "writ shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law. It shall issue on the information of the party beneficially interested."

**{19}**    The purpose of mandamus is "to compel a public officer to perform an affirmative act where, on a given state of facts, the public officer has a clear legal duty to perform the act and there is no other plain, speedy, and adequate remedy in the ordinary course of the law." *Mimbres Valley Irrigation Co. v. Salopek*, 2006-NMCA-093, ¶ 11, 140 N.M. 168, 140 P.3d 1117. A writ of mandamus "may be issued to any inferior tribunal . . . to compel the performance of an act which the law specially enjoins as a duty resulting from an office[.]" Section 44-2-4. A writ of mandamus, however, will not lie to control discretion lawfully vested in the official functions of a state official. *See Territory ex rel. Castillo v. Perea*, 1900-NMSC-026, ¶ 12, 10 N.M. 362, 62 P. 1094 ("It is not the province of a writ of mandamus to control the discretion of an officer, where a discretion is vested in him."); *El Dorado at Santa Fe, Inc. v. Bd. of Cnty. Comm'rs*, 1976-NMSC-029, ¶ 5, 89 N.M. 313, 551 P.2d 1360 (holding that mandamus is not appropriate to "direct the performance of the particular act from among two or more allowed alternatives"). "Mandamus is a drastic remedy to be invoked only in extraordinary circumstances." *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998-NMCA-023, ¶ 12, 124 N.M. 698, 954 P.2d 763.

**{20}**    There are two requirements for mandamus to issue: (1) "the petitioner must establish a clear legal right to the performance of the duty sought to be enforced"; and (2) "the act to be compelled must be ministerial constituting a nondiscretionary duty which the respondent is required to perform." *Kerpan*, 1988-NMCA-007, ¶¶ 9, 10. "A 'ministerial duty' arises only when the law directs that a public official must act when a given state of facts exists." *Mimbres Valley Irrigation Co.*, 2006-NMCA-093, ¶ 11. Acts and duties performed by a public official "are no less ministerial because the public official, upon whom the duty is enjoined, may have to satisfy himself as to the existence of facts necessary to require his action[.]" *El Dorado at Santa Fe, Inc.*, 1976-NMSC-029, ¶ 5. However, when a public official refuses to act after such a determination is made, mandamus is the proper remedy and mandamus will issue to compel acts committed to their discretion if the law requires them to act. *Id.* Conversely, " '[d]iscretion' . . . has been defined as the power or right conferred upon an individual to act according to the dictates of one's own judgment and conscience." *Kerpan*, 1988-NMCA-007, ¶ 14.

**{21}**    "[T]he grant or denial of a petition for writ of mandamus is reviewed for an abuse of discretion." *State ex rel. Stapleton v. Skandera*, 2015-NMCA-044, ¶ 5, 346 P.3d 1191. "A district court abuses its discretion if its decision is contrary to logic and reason, or if it exceeds the bounds of reason, all the circumstances before it being considered." *FastBucks of Roswell, N.M., LLC v. King*, 2013-NMCA-008, ¶ 7, 294 P.3d 1287 (internal quotation marks and citations omitted). "Within the abuse of discretion standard we consider whether the district court's ruling rested on its determination that [Respondent] acted [outside of its] statutory authority and exercised [its] discretion under statute." *Stapleton*, 2015-NMCA-044, ¶ 5. "That issue presented requires the interpretation of statutes. Thus, our review is de novo." *Id.*

**{22}** We distill Respondent's arguments into two dispositive issues: (1) whether petitioner had standing, and (2) whether mandamus can direct a particular discretionary finding. We address each in turn.

## Standing

**{23}** Respondent asserts that the district court erred in granting standing to Petitioner. Specifically, Respondent argues that Petitioner is not a beneficially interested party in the death certificate and New Mexico jurisprudence does not expand "a cause of action based in tort, to encompass a quasi-due process right in the determination of manner of death[.]" Petitioner responds that the district court properly determined that she had standing because she has a quasi-property interest in Han's body that extends to the manner of death determination on Han's death certificate and thus is a beneficially interested party. We need not determine whether a quasi-property right in a dead body creates standing to challenge the manner of death determination on a death certificate because, even if we assume without deciding that it does, we hold that the district court erred in concluding that the determination of manner of death itself was a ministerial duty subject to mandamus. We explain.

## Duty Clearly Enjoined by Law/Ministerial

**{24}** Respondent contends the district court erred in finding that determinations on the manner of death are ministerial acts because such determinations are medical opinions. In support of this position, Respondent directs this Court to the language on "the death certificate itself"[6] and testimony adduced during the hearing.

**{25}** "In determining whether mandamus will lie, the court must look to the purpose of the statutory scheme to discover whether the duty sought to be compelled is ministerial or discretionary." *Kerpan*, 1988-NMCA-007, ¶ 15. The Vital Statistics Act requires OMI to investigate, determine, and certify causes of death. NMSA 1978, § 24-14-20(F) (2009). It states in pertinent part "[w]hen death occurs without medical attendance . . . the case shall be referred to the state medical investigator for investigation to determine and certify the cause of death." *Id.*

**{26}** The use of the term "shall" in Section 24-14-20(F) indicates that the Legislature intended to impose a mandatory duty to refer deaths that occur without medical attendance to OMI, which must then conduct an investigation to determine and certify the cause of death. *See N.M. Dep't of Health v. Compton*, 2000-NMCA-078, ¶ 11, 129 N.M. 474, 10 P.3d 153 (recognizing that "when the language of a statute is clear and unambiguous, it must be given effect by the courts" and in general " 'use of the word "shall" imposes a mandatory requirement' " (omission omitted)) (quoting *Redman v. Bd. of Regents*, 1984-NMCA-117, ¶ 17, 102 N.M. 234, 693 P.2d 1266); *see also* NMSA 1978, § 12-2A-4(A) (1997) (" 'Shall' and 'must' express a duty, obligation, requirement

---

6The certifying language on the death certificate states, "On the basis of examination and/or investigation, in my opinion this death occurred at the time, date and place due to the cause(s) and manner stated."

or condition precedent."); *Mimbres Valley Irrigation Co.*, 2006-NMCA-093, ¶ 11 (explaining that a ministerial duty arises only when the law directs that a public official must act when a given state of facts exist).

**{27}** OMI's own regulations incorporate the duty to investigate, determine, and certify the cause of reportable deaths in 7.3.2.8 NMAC. Pursuant to this regulation of the Administrative Code, OMI is required in part to:

> A.    receive all reports of sudden, unexpected or unexplained deaths;
>
> B.    respond to all sudden, unexpected or unexplained deaths;
>
> . . . .
>
> F.    *conduct an investigation leading to the determination of the cause and manner of death*;
>
> . . . .
>
> H.    *certify the cause and manner of death; forward written certification to designated agencies*;
>
> . . . .
>
> P.    maintain records of each official death investigation and provide reports to official agencies.

7.3.2.8 NMAC (emphasis added).

**{28}** Regulation 7.3.2.13(B) of the New Mexico Administrative Code additionally provides that:

> The office of the medical investigator is responsible for the completion of the certificate in all deaths reported to that office in which jurisdiction is assumed. This certification is to the cause (the anatomic condition causing death) and the manner (accident, suicide, accidental, homicide). The cause and manner of death shall be finally determined by the designated pathologist, in accordance with the findings and recommendations of the district and deputy medical investigators.

**{29}** Based on the unambiguous language of Section 24-14-20(F) in addition to the OMI's own regulations, we agree that Respondent's duty to investigate, determine, and then certify the manner of death on a death certificate, is a ministerial one. Here, it is undisputed that OMI responded to a sudden, unexplained death at the Han residence, investigated, determined, and certified the cause and manner of Han's death on the

death certificate. In so doing, we conclude that Respondent fulfilled the ministerial duties identified in Section 21-14-20.

**{30}** However, the mandamus order in this case went beyond directing Respondent to fulfill the ministerial duties of investigating, determining, and certifying the cause and manner of death and ordered Respondent to change its medical opinion of the manner of death from "suicide" to "undetermined." This directive exceeded the proper bounds of mandamus because Respondent's conclusion as to manner of death is not a ministerial act. Rather, based on the record before us, we hold that it is an opinion reached through the exercise of discretion.

**{31}** For example, Dr. Spitz testified that when a medical examiner identifies a manner of death on a death certificate, the examiner is not making a ruling but merely rendering an opinion to the Vital Statistics Bureau as to how the death should be statistically coded. Dr. Spitz explained that the classification of manner of death on a death certificate represents what the signator believes, to the best of the person's knowledge, based on his or her education, medical training, experience in the field, and reasoning. Similarly, Dr. Sperry testified that a forensic pathologist uses discretion when determining manner of death and that cause and manner of death are statements of opinion. Additionally, Dr. Williams noted that he once refused to change his manner of death determination on a death certificate because he believed he had an ethical obligation as a doctor not to change his opinion. And, Dr. Reichard testified that his determination of Han's manner of death was an opinion based on a reasonable degree of medical probability.

**{32}** We previously considered the difference between determinations of the manner of death and the cause of death when we addressed the admissibility of a death certificate to prove cause of death in *Corlett v. Smith*, 1988-NMCA-067, ¶¶ 24-29, 107 N.M. 707, 763 P.2d 1172. This Court held that the cause of death determination in death certificates is a factual finding and therefore admissible under the vital statistics exception to the hearsay rule. In coming to the holding, we distinguished between determinations of *cause* of death and *manner* of death, recognizing that "[m]ost jurisdictions hold that death certificates are admissible as evidence of cause of death. Courts will not, however, readily admit death certificates as evidence of the manner of death, e.g., 'suicide' or 'accidental,' deeming that conclusion not a fact, but an opinion." *Id.* ¶ 26. Our discussion in *Corlett* acknowledges the distinction between a factual finding and a determination that requires a degree of discretion, as was the case here.

**{33}** Based on the controlling statutory and regulatory language, further buttressed by the testimony of the medical experts, we conclude that Respondent's determination as to the manner of death is a discretionary determination, in which mandamus cannot be used to direct a specific outcome. *See Perea*, 1900-NMSC-026, ¶ 12 (observing that a writ of mandamus will not control the discretion of an officer where a discretion is vested in him or her); *State ex rel. Castillo Corp. v. N.M. State Tax Comm'n*, 1968-NMSC-117, ¶ 16, 79 N.M. 357, 443 P.2d 850 (stating that "the purpose of mandamus is to compel, not control"); *El Dorado at Santa Fe, Inc.*, 1976-NMSC-029, ¶ 5 (observing that a writ of

mandamus cannot be used to direct the performance of a particular act from among two or more allowed alternatives). Because New Mexico case law generally prohibits use of mandamus to control or interfere with the valid exercise of discretion by a state official, the issuance of the mandamus order in this case directing Respondent to change its medical opinion as to manner of death was error.

**{34}** To the extent the district court relied on out-of-state mandamus authority to review Respondent's "suicide" opinion, contrary to our own New Mexico authority cited previously, we conclude the district court erred in doing so. New Mexico's writ of mandamus relies on the New Mexico Constitution, state statute, and an abundance of jurisprudence from our Supreme Court stretching back over one hundred years. It is not for this Court to deviate from such clear direction. Given our New Mexico authority instructing that mandamus is inappropriate to direct a specific determination where the discretion to make that determination is vested in the public officer, we are reluctant to adopt a new approach to mandamus. *See El Dorado at Santa Fe Inc.*, 1976-NMSC-029, ¶ 5. However, we observe that legal avenues other than mandamus do exist to challenge administrative decisions for being arbitrary, an abuse of discretion, or unsupported by substantial evidence, but we express no opinion as to whether a writ of certiorari might have been appropriate in this case. *See* Rule 1-075 NMRA.

**{35}** Therefore, because Respondent's determination of a decedent's manner of death is an opinion amongst more than two options, i.e., *undetermined*, *suicide*, *accidental*, or *homicide*, there is no question the discretion to identify the manner of death is vested in Respondent. *See* 7.3.2.13(B) NMAC. We therefore hold that the district court abused its discretion in directing Respondent to amend the manner of death from "suicide" to "undetermined."

**Attorney Fees**

**{36}** Petitioner appeals the district court's denial of attorney fees arguing in part that this Court should apply a public policy exception to the American Rule dictating that, absent statute or rule of court, parties are responsible for their own litigation costs. Petitioner also argues that this Court should expand awards of attorney fees as damages in civil litigation cases where public policy is at issue. However, Petitioner's arguments necessarily require that Petitioner be the prevailing party. Because we conclude that the district court improperly granted mandamus in this case and reverse the court's peremptory writ, Petitioner is not a prevailing party; thus, we do not address these arguments.

**CONCLUSION**

**{37}** For the foregoing reasons we reverse the peremptory writ of mandamus and affirm the denial of attorney fees.

**{38}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**RICHARD C. BOSSON, Judge Pro Tempore**