[No. 1847, May 2, 1916.]

## STATE ex rel. GARCIA v. BOARD OF COMMISSIONERS OF RIO ARRIBA COUNTY.

### SYLLABUS BY THE COURT.

1. The answer to an alternative writ of mandamus under our statutes may assign any legal reasons upon which respondent relies to defeat the issuance of the peremptory writ, as well as plead the facts, if any exist, on which he relies to defeat the issuance of the same.

P. 637

2. The Legislature, by the provisions of section 2 of chapter 12 of the Laws of 1915, providing for the salaries of deputy sheriffs of counties of the fourth class, a total of not to exceed $700, intended to provide for the payment of salaries of such deputies as were appointed after the election of the county officers at the first general election held under the Constitution of the state, where deputies had been employed and expenditures made or contracted, to the extent of such limitation. The further limitation of the section that none, referring to deputies, be employed except upon the authority of the board of county commissioners was intended to have application only to the future, and does not require authorization of the board of county commissioners in the employment of deputies prior to the passage of the act.

P. 641

3. An account by the sheriff of a county of the fourth class for reimbursement for sums paid out on account of the employment of deputies is not in contravention of the provisions of section 1 of article 10 of the Constitution of New Mexico, prohibiting county officers from receiving to their

own use any fees or emoluments other than the annual sal-
ary provided by law.

P. 646

Appeal from District Court, Rio Arriba County; E. C.
Abbott, Judge.

Mandamus by the State, on the relation of Elias Gar-
cia, against the Board of County Commissioners of Rio
Arriba County, N. M.   From judgment for defendant,
plaintiff appeals.   Reversed and remanded.

E. P. DAVIES of Santa Fé, for appellant.

Return to alternative writ must be limited to denial of
facts alleged therein.
Sec. 3420, Code 1915; Conklin v. Cunningham, 7 N.
M. 445.

Fact that employment of deputies by appellant had not
been authorized by county commissioners is immaterial.
Sec. 2, c. 12, L. 1915.

A. M. EDWARDS, Assistant District Attorney, of Santa
Fé, for appellee.   JOHN R. McFIE and RENEHAN &
WRIGHT, all of Santa Fé, of counsel.

Can law issues be made by the return?
Conklin v. Cunningham, cited by appellant is not in
point.   Sec. 3419, Code 1915; 26 Cyc. 465; Wampler v.
State, 38 L. R. A. 829; State v. Railroad, 60 L. R. A.
831; sec. 3418, Code 1915; sec. 3420, Code 1915; Wil-
liams v. New Haven, 68 Conn. 263; Woodruff v. N. Y.,
etc., R. Co., 59 Conn. 63; State v. Beyers, 41 Mo. App.
503; Springfield v. Co. Com'rs, 10 Pick. 59; People v.
Ulster County, 32 Barb. 473; Commonwealth v. Pitts-
burg, 34 Pa. St. 496; State v. Lean, 9 Wis. 279.

Provision with reference to employment and compen-
sation of deputies is prospective only.

Sec. 2, c. 12, L. 1915; Delgado v. Romero, 17 N. M. 81.

For sheriff to receive such money, in the face of the statute, would be plain violation sec. 1, art. 10, State Constitution.

### STATEMENT OF FACTS.

This proceeding in mandamus was instituted in the district court of Rio Arriba county by the relator, Elias Garcia, the duly elected, qualified, and acting sheriff of said county, who alleged in his petition for the writ that, in order to perform the duties incident to his office, the employment of deputies was absolutely necessary, and were therefore employed by relator, who made use of their services, in the proper discharge of his duties, from the time of his qualification as sheriff of said county until after the 20th day of February, 1915, at which time an act relating to county officers was passed by the state. Legislature, being chapter 12 of the Session Laws of 1915, providing salaries and compensation of county officers and deputies. Relator further alleged by his petition that he had paid in part and become liable in law and by his promise to pay the sum of $2,158.00 to his said deputies for their services so rendered; that no compensation was fixed by law for the said sheriff or his deputies prior to the enactment of the salary measure referred to, adopted at the legislative session of 1915, and that by said act Rio Arriba county was designated a county of the fourth class, and the relator, under the terms of said act, became entitled to receive from said county the sum of $700 per year for the compensation of deputies employed by him prior to and up to the time of the passage of said law; that relator filed with the board of county commissioners of Rio Arriba county an itemized account under oath, as required by law, and that it became the duty of the board of county commissioners of said county to pay to said relator the said sum of $700 per year, or a total of $2,158.33, for deputy hire referred to. But, notwithstanding relator's demand upon the said board of county commissioners, and notwithstanding the

State ex rel. Garcia v. Board of Commissioners, 21 N. 632.

fact that there were ample funds in the treasury to pay said claim, the defendant board of county commissioners failed and refused to pay the sum due and owing relator, or to issue certificates of indebtedness as provided by the salary measure, or in any other manner to settle said claim. Wherefore relator prayed for an alternative writ of mandamus, commanding the defendant board of county commissioners of said county to allow and pay the said claim, or to issue certificates of indebtedness therefor.

An alternative writ of mandamus reciting the facts referred to in said petition was subsequently issued, together with the rule to show cause, in response to which an answer was filed by defendant board of county commissioners of said county, in conformity with the order of the district court.

The answer of the defendant board of county commissioners set up that the information or petition of relator did not state facts sufficient to sustain the issuance of said alternative writ for the following reasons:

"(a) That it does not appear from said information and petition that the employment of deputy sheriffs by relator had been authorized by defendant board, as required by law to be done. (b) That it does not appear from said petition that relator has expended the sum demanded, to wit, $2,-158.35, or any sum whatever in the employment of deputies, and the payment to him of said sum or any portion thereof would be in violation of section 6 of chapter 12 of the Laws of 1915, and contrary to the inhibition of section 1 of article 10 of the Constitution of the state of New Mexico."

The answer further denied and admitted certain more or less formal allegations, set out in relator's petition and the writ, and, among others, denied that relator became and was entitled to receive from said county the sum of $700 per year, or any sum, for the purpose of paying deputies; admitted that relator filed his account as related in the petition, and that relator made demand for payment of said account as alleged, and that there were sufficient funds for the payment thereof, or that certificates of indebtedness could have been issued by said defendant board. And by way of further answer, the de-

fendant board of county commissioners alleged that at
no time had it authorized the expenditure of $700 per
annum, or any sum, for the employment of deputies by
relator, nor had it authorized relator to employ deputies
at all, except that after the passage of the salary act re-
ferred to and pursuant to the terms thereof the said de-
fendant board authorized relator, as sheriff of said county,
to employ deputies, and fixed the annual compensation
therefor at the sum of $300, and finally prayed for a dis-
missal of the writ at relator's cost.    Whereupon relator
filed his motion to strike paragraph 1 of the answer, on
the ground that the answer to an alternative writ must
be limited to a denial of the facts therein alleged, and
because it was an attempt to create other issues than
those of fact, which motion was overruled, and the action
of the court duly excepted to.    Thereupon certain find-
ings were made by the district court and judgment en-
tered, which recited that the court found that the infor-
mation upon which the alternative writ was based does
not state facts sufficient to warrant the issuance of a per-
emptory writ of mandamus, in that it does not appear
from said information that the employment of deputies
by relator had been authorized by the defendant board,
as required by law to be done.    And further finding that
the payment by defendant board of the sum demanded by
relator would be contrary to the provisions of chapter 12
of the Session Laws of 1915, and that said payment is
inhibited by the provisions of section 1 of article 10 of
the Constitution of New Mexico, and ordering and ad-
judging that the petition of relator and the alternative
writ of mandamus be dismissed, and that the defendant
board of county commissioners recover from the relator
its costs.    From such judgment of the district court an
appeal was prayed and allowed.

### OPINION OF THE COURT.

. HANNA, J. (after stating the facts as above.)—The
first point presented for our consideration by the appel-
lant is based upon the first assignment of error, and is
predicated upon the action of the trial court in overrul-

State ex rel. Garcia v. Board of Commissioners, 21 N. 632.

ing relator's motion to strike paragraph 1 of the answer of respondent; appellant's contention in this respect being based upon the theory that the return of the respondent to the alternative writ of mandamus must be limited to a denial of the facts alleged therein, and that the motion should have been granted because the said paragraph of the answer attempted to create other issues than those of fact.

Appellant contends that under section 3420, Code 1915, no other pleading or written allegation is allowed than the writ and answer, and that under the authority of the case of Conklin v. Cunningham, 7 N. M. 445, 38 Pac. 170, the return of respondent to an alternative writ must be limited to a denial of the facts alleged therein, and traverses in pleadings cannot properly create other issues than those of fact, nor can the conclusion of law resulting from such statements in the alternative writ be controverted by the respondent in his answer. In a word, the theory of appellant is that the alternative writ has been declared legally sufficient by the court in signing the same and cannot be attacked as to its sufficiency in law, but the respondent is restricted to a denial of the facts recited in the alternative writ.

[1] The question turns upon the construction of our statute dealing with the subject of mandamus, which appears as sections 3411-3424, inclusive, of the Code of 1915.

Our first inquiry is directed to the intent of the statute in limiting the pleas of each of the parties under a mandamus proceeding to the writ and answer, and we agree with the suggestion of appellee that the evident purpose in limiting the pleadings in mandamus proceedings is to expedite the hearing of this class of actions, prompt decisions being the prime object sought, for which reason dilatory pleas are at least impliedly excluded from the procedure in this class of cases. In the early practice at common law no pleadings were allowed in mandamus beyond the return, and the court proceeded to summarily hear and dispose of the application upon the writ and

the return; the latter being taken as conclusive. See High's Ex. Leg. Rem. §§ 457.

As pointed out by this distinguished author, the return not being traversible, the only remedy of the relator in case it proved false was by an action on the case for a false return, which resulted in two actions oftentimes, and other obvious difficulties, to obviate which inconvenience, and for the purpose of obtaining speedier justice, the Statute of 9 Anne, c. 20, was enacted, regulating the pleadings in mandamus in all cases relating to municipal corporations, and by a later act (1 Wm. IV, c. 21) the provisions of the Statute of Anne were extended to all cases of mandamus.

The question of how far the common-law status of this remedy has been affected by our legislation upon this subject might prove a difficult one were it not for the fact that it is clear that our statute was adopted in its entirety and to all intents and purposes in hæc verba, from an earlier statute from the state of Kansas. While the precise question now under consideration was never before the Supreme Court of Kansas so far as we are able to ascertain, that court did, in numerous decisions, pass upon similar questions, and its construction of the Kansas statute with respect to the procedure required is instructive and undoubtedly of controlling weight with this court. In an early case (State ex rel. Ayers v. Stockwell, 7 Kan. 98), the Supreme Court of Kansas, in passing upon the effect of a motion to quash an alternative writ of mandamus on the ground that such writ did not state facts sufficient to entitle the relator to the relief sought, held that the motion was equivalent to a demurrer to a petition in an ordinary action, thereby impliedly recognizing, at least, the right to raise a question of law going to the sufficiency of the writ. If such question can be raised by a motion to quash, we doubt not that it could be equally well raised in the answer to the rule to show cause.

In another early case (State of Kansas ex rel. A., T. & S. F. Ry. v. Board of County Commissioners of the

County of Jefferson, 11 Kan. 66), the same court reviewed the common-law history of the remedy of mandamus and pointed out that:

"This old common-law mode or procedure for mandamus has been materially changed by statute, not only in Kansas, but in nearly every other state, and in England. The present action of mandamus is not only the old common-law proceeding of mandamus, but it is also the old common-law action on the case for the false return. It is the two proceedings combined. The alternative writ is now not merely a writ, as formerly, but it is also a pleading. The return is now not merely a response to the writ, as formerly (which return could not formerly be traversed or denied), but it is also a pleading."

As further pointed out by the same court, the proceeding by mandamus is now considered as a civil action by and between the real parties thereto, the relator and the respondent. This is indicated very clearly by a reading of our statutes, and while the pleadings are evidently limited to the writ and answer, nevertheless it is provided that where an answer contains new matter, the plaintiff may, on the trial or other proceedings, avail himself self "of any valid objection to its sufficiency, or may countervail it by evidence either in direct denial or by way of avoidance." Section 3419, Code 1915.

Thus it would appear that our statute permits a question of the sufficiency of the return to be raised at the trial by relator which, impliedly at least, would refer to an objection in point of law to the sufficiency thereof, as in the same section reference is made to the right to countervail or counteract the allegations of the return by evidence either in direct denial or by way of avoidance, which would clearly refer to issues of fact.

In an opinion written by the Supreme Court of Kansas, but a short time before the adoption by this jurisdiction of the Kansas statute, in the case of L. J. Crans v. John Francis, Treasurer of Kansas, 24 Kan. 750, that court said:

"Pleadings in mandamus are, by the Code, to be construed as pleadings in an ordinary civil action. A motion to quash the answer, if such a motion is proper, is not equivalent to

a motion to make the answer more specific and definite, or to strike out a part of it as redundant and superfluous, or to compel an election between different defenses; but it is a challenge of the substance of the defense or defenses presented, is equivalent to a demurrer, or a motion for judgment over the answer, and can only be sustained when in fact the answer contains no defense to the plaintiff's cause of action."

Here again we find a recognition of the right to raise a legal objection to the sufficiency of the answer. Referring to High's Ex. Leg. Rem. (3rd ed.) § 460, we find the right to raise a legal objection by the answer recognized. We quote as follows:

"Unless, therefore, the alternative writ is quashed, the respondent is bound to make return, and to set forth either a positive denial of the truth of the allegations contained in the writ, upon which the relator founds his claim for relief, or to state other facts sufficient in law to defeat relator's right, since the court has already determined upon the application for the alternative writ that the facts stated are prima facie true, and that they entitle the relator to the relief sought."

We find that the Kansas statute was adopted by the jurisdiction of Oklahoma (see chapter 60, art. 12, Rev. Laws Okl. 1910, vol. 2), and the right to raise legal questions as to the sufficiency of the writ was recognized by the Supreme Court of Oklahoma in the case of J. B. Beadles v. W. R. Fry, Treasurer of the City of Perry, 15 Okl. 428, 82 Pac. 1041, 2 L. R. A. (N. S.) 855, which held, quoting from the syllabus:

"Where a good and sufficient alternative writ of mandamus has been issued and served, and no jurisdictional question is involved, it is the duty of the defendant to file his answer to such writ in the first instance. and as the answer under the statute is substituted for the return in the English courts. and as the statute expressly prohibits any pleading except the alternative writ and the answer the defendant should assign in his answer any legal reasons, as well as plead the facts. if any exist, on which he relies to defeat the issuance of the peremptory writ."

The syllabi quoted from goes further and lays down the rule that a motion to quash being in the nature of a general demurrer must be treated as an answer admit-

State ex rel. Garcia v. Board of Commissioners, 21 N. 632.

ting the facts recited in the writ, but we are not required to pass upon a like question, and do not therefore decide at this time whether a motion to quash would be permissible under our practice or not. In the present case the answer to the writ raised a legal question.

The Oklahoma Supreme Court, in the case cited, referred to and clearly recognized the right of respondent to raise legal objections to the sufficiency of the alternative writ, and to that extent, at least, is an authority upon which we can rely in the present case and is peculiarly persuasive in its influence upon us by reason of the fact that it is a construction of the Oklahoma statute which was adopted from the state of Kansas, as was ours. We therefore hold that the answer to an alternative writ of mandamus under our statutes may assign any legal reasons upon which respondent relies to defeat the issuance of the peremptory writ, as well as plead the facts, if any exist, on which he relies to defeat the issuance of the same. Our conclusion makes it necessary to overrule this assignment of error, and we proceed to a consideration of the next point urged.

[2] The second assignment of error, which is the subject of the next point presented by appellant, assigns error in the finding of the trial court to the effect that the petition or information of relator did not state facts sufficient to sustain the issuance of said peremptory writ of mandamus, in that it did not appear from said information or petition that the employment of deputies by the relator, as sheriff of Rio Arriba county, had been authorized by defendant board. It is contended that there was no provision of law requiring the authorization by the board prior to the enactment of the so-called county salary bill by the Legislature of 1915, and that the ruling of the trial court operated to give retroactive effect to the provision of legislative act in this respect. This assignment of error, and the argument of appellant relative thereto, necessitates our consideration of the provisions of section 2 of chapter 12 of the Session Laws of 1915, relative to the employment of deputy sheriffs in

counties of the fourth class. Section 1 of the act in question makes provision for a classification of the several counties of the state. Section 2 provides as follows:

"Sec. 2. Upon the basis of the foregoing classification the annual salaries of county officers in the several counties of the states for the terms for which such officers were elected are hereby fixed as follows:"

As to counties of the fourth class, after providing for salaries of commissioners and other county officers, it further provides:

"Deputy sheriffs, a total of not to exceed seven hundred dollars none to be employed except upon authority of the board of county commissioners."

That portion of the last quotation which we have italicized presents the basis of the controversy involved in this assignment of error. Does the provision have retroactive effect, and can recovery be had for the employment of deputies prior to the date of the passage of the act, where such employment was not authorized by the board of county commissioners? It is conceded by both parties that, prior to the passage of the act of 1915, which clearly limits the right of the sheriff in the matter of the employment of deputies, the law permitted the sheriffs of the several counties of the state to appoint deputies who should remain in office during the pleasure of the sheriff. See section 1255, Code 1915. Ordinarily there would be but little controversy over the construction of language evidently of such plain purport and intent as is the language in question, and the provision as to the employment of deputies upon authority of the board of county commissioners, as written in the act of 1915, would clearly only speak for the future, but for certain general provisions of the act appearing elsewhere, which would seem to give the act as a whole a retrospective effect. It is clearly apparent from that portion of section 2 quoted above that the salaries provided for by the act are for the terms for which such officers were elected, and would therefore have effect from the date

State ex rel. Garcia v. Board of Commissioners, 21 N. 632.

of the qualification of the county officers. This would be within the intent of the constitutional provision directing the Legislature to make provisions for the salary of county officers. By the terms of section 9 of the act, it was provided that each county officer should file with the board of county commissioners of his county an accurate account under oath of moneys received by him or any deputy, in which account he should take credit for all amounts allowed to him in any form, or on any account, under the terms of the act, as applicable to the time prior to the passage of said act, and based upon such account, he should make settlement with the treasurer of the county. This section of the act likewise indicated that for some purposes the act must have, and was intended to have, a retroactive effect. If any doubt existed as to the intent of the Legislature in this respect it would certainly be settled by the provisions of section 18 of the act, as follows:

"Sec. 18. The provisions of this act shall be construed as applicable and in force from and after the date of qualification by the several county officers elected at the first general election held under the Constitution of the state."

We cannot assume, however, that the Legislature intended to invalidate the employment of all deputies by the several sheriffs in the different counties of the state during those years prior to the passage of the act of 1915. These officers qualified in the month of January, 1912, and unquestionably in most, if not all, of the counties it was necessary for the sheriff to employ one or more deputies. This he was authorized to do under the statute of New Mexico prior to the repeal of such law, if it be repealed by implication, by reason of the conflict existing by the provision of the salary act of 1915, requiring the approval of boards of county commissioners in the matter of the appointment of deputy sheriffs. This being the status of the law, it must be said that the Legislature intended that deputy sheriffs should not be paid for their services for the years 1912, 1913, and 1914, unless boards of county commissioners had approved their appointment

when all officials and the Legislature must have recognized that such approval was not requisite prior to the act of 1915. We must assume that the Legislature knew the status of the law, and could not have intended that this provision of section 2 should be retroactive, but must have intended that as to the employment of deputy sheriffs in the future none should be employed except upon authority of the board of county commissioners.

We therefore conclude that the Legislature, by the provisions of section 2 of chapter 12 of the Laws of 1915, providing for the salaries of deputy sheriffs of counties of the fourth class a total of not to exceed $700, intended to provide for the payment of salaries of such deputies as were appointed after the election of the county officers at the first general election held under the Constitution of the state, where deputies had been employed and expenditures made or contracted, to the extent of such limitation. The further limitation of the section that none, referring to deputies, be employed except upon the authority of the board of county commissioners was intended to have application only to the future, and does not require authorization of the board of county commission ers in the employment of deputies prior to the passage of the act.

We do not desire to be understood as holding that the amount of $700 would be due the sheriff in any event for the years prior to the passage of the act on account of the employment of deputies irrespective of whether or not deputies had been actually employed. The evident intent of the lawmakers in this respect was that, so far as liability has accrued in the employment of deputy sheriffs, and in a sum not to exceed $700, the burden would be assumed by the county of the fourth class. The Legislature is presumed to know the law as to the payment of sheriffs and deputies prior to the enactment of the salary act, and well knew and fully understood that the office of sheriff was a fee office and that the deputies were paid by the sheriff, and the disposition to change this condition is clearly shown. But the Legislature desired to

JANUARY TERM, 1916. 645

State ex rel. Garcia v. Board of Commissioners, 21 N. 632.

limit counties of the fourth class to a liability in connection with deputy sheriffs not exceeding the sum of $700. This we believe to be the plain intent of the act.

Assignment of error No. 3 is but a statement in other language of the question presented by assignment No. 2, and is therefore not necessary of further discussion.

Assignment of error No. 4 predicates error upon the action of the district court in finding that the payment of the defendant board of the sum demanded by relator would be contrary to the provisions of section 1 of article 10 of the Constitution. This section of the Constitution is as follows:

"Section 1. The Legislature shall at its first session classify the counties and fix salaries for all county officers, which shall also apply to those elected at the first election under this Constitution. And no county officer shall receive to his own use any fees or emoluments other than the annual salary provided by law, and all fees earned by any officer shall be by him collected and paid into the treasury of the county."

The theory of the district court evidently was that if the sheriff was permitted to collect the sum of $700 on account of the employment of deputies, as is sought to be done by relator, the effect would be to give this particular county officer "fees or emoluments" other than the annual salary provided by law. We do not agree with this view of the matter as taken by the trial court, and it is sufficient to say in this connection that the provisions of the act of 1915 are clearly only intended to reimburse the sheriff for the amounts expended by him in the employment of deputies in a sum not to exceed $700, which would evidently mean that so far as he had contracted obligations or advanced money for the pay of deputies he would be entitled to reimbursement, not exceeding the sum mentioned. Therefore this provision for the pay of deputies would not be a provision in the nature of an increase of salary or emolument otherwise provided by the act for the sheriff, and could not be said to be the receiving to his own use of any fee or emolument other than his annual salary provided by law. We find noth-

ing in this act prohibiting the sheriff from collecting the amount which could be shown to be due for salary of deputies, and the Legislature undoubtedly knew that the sheriffs of the several counties were advancing the salary of the deputies if any were employed. Prior to statehood the sheriffs had been required to pay all deputies, as we have pointed out, and there was no provision until the passage of the salary act for the paying of these officers, and none could have been employed or paid except the sheriff would assume the burden and responsibility in that respect. In the same section of the act of 1915, a provision for the payment of additional deputies in the office of clerks of the district court, the Legislature provided that the amounts "shall be payable only to the deputy performing such services," and had the Legislature intended to prohibit the sheriff from collecting the amounts provided for the payment of deputy sheriffs it would have been a simple matter to have made a similar provision that the deputy only could collect. Therefore the absence of such provision, we believe, indicates a contrary intention, so far as the Legislature was concerned, as to the payment of deputy sheriffs. The Legislature also made other provisions for the employment of deputy sheriffs for short periods of time, as during terms of the district court, and for two weeks prior thereto, and also for the appointment of other deputies under authority of the district courts, in case of "extraordinary necessity," and it could not have been, and undoubtedly was not, the intention of the Legislature to require such deputies employed for a brief period of time, perhaps only a few days in some instances, to look to the county for payment of salary, and, in our opinion, it would be not only permissible, but highly proper and consistent with sound business policy, to permit the sheriff so appointing temporary deputies to pay them the amount of their compensation and seek reimbursement through the usual channels.

[3] We therefore conclude that an account by the sheriff of a county of the fourth class for reimbursement

of sums paid out on account of the employment of deputies is not in contravention of the provisions of section 1 of article 10 of the Constitution of New Mexico, prohibiting county officers from receiving to their own use any fees or emoluments other than the annual salary provided by law. Other reasons might be given for our conclusion in this respect, but we consider the reasons. here given sufficient, and will not unduly lengthen this opinion by further discussion.

The fifth and last assignment of error is predicated upon the judgment of the trial court dismissing the petition of relator and the alternative writ of mandamus. The reasons asserted in support of such assignment are very largely the legal questions discussed in connection with the foregoing assignments of error, and in view of our conclusions with respect thereto, it becomes necessary to sustain this assignment of error and to reverse the judgment of the trial court, remandnig the cause to the district court of Rio Arriba county for further proceedings in accordance with this opinion; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

SYLLABUS BY THE COURT.