This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37853**

**NEW MEXICO TOP ORGANICS-ULTRA HEALTH, INC.,**

 Petitioner-Appellee,

v.

**LYNN GALLAGHER, in her official capacity as Secretary of the New Mexico Department of Health; and KENNY VIGIL, in his official capacity as Medical Cannabis Program Manager of the New Mexico Department of Health,**

 Respondents-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Egolf + Ferlic + Martinez + Harwood, LLC
Brian Egolf
Santa Fe, NM

Kristina Caffrey, Chief Legal Officer
Albuquerque, NM

for Appellee

Narvaez Law Firm, P.A.
Henry F. Narvaez
Ashlee M. Wright
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**B. ZAMORA, Judge.**

**{1}**     The New Mexico Department of Health (DOH) appeals from the district court's grant of a writ of mandamus directing DOH to issue an amended medical cannabis license to Petitioner New Mexico Top Organics-Ultra Health, Inc. (Ultra Health) and to designate Ultra Health's two new stores as distribution locations for medical cannabis.[1] We affirm.

**BACKGROUND**

**{2}**     Ultra Health is a licensed non-profit producer (LNPP) of medical cannabis under the Lynn and Erin Compassionate Use Act (the Act), NMSA 1978, §§ 26-2B-1 to -7 (2007, as amended through 2019).[2] In 2018, Ultra Health filed two separate applications for an amended license to open two new distribution locations in Los Lunas and Española, New Mexico. DOH denied the applications, citing concerns that Ultra Health lacked a sufficient stock of medical cannabis to supply the proposed dispensaries, potential inability to sustain the proposed locations to serve patients, issues concerning patient privacy and confidentiality, and the security of cannabis products. In August 2018, Ultra Health filed a verified petition for alternative writ of mandamus with the district court, challenging DOH's denials. Ultra Health alleged that DOH had no authority to deny Ultra Health's application to open these two new distribution locations because DOH's role in approving new dispensaries was purely ministerial. Following hearings on the matter, the district court issued an order granting the petition.

**{3}**     In relevant part, the district court found that Section 26-2b-7(A)(6) specifies the only criteria DOH may consider when designating new or additional distribution locations, and that DOH stipulated, in a prior, separate administrative proceeding, that there is no administrative appeal from DOH's decision to deny an application for an amendment to a LNPP's license to designate a new distribution location. Based on these findings, the district court determined that designating new distribution locations is a "ministerial" act. Accordingly, the district court issued the writ, and ordered DOH to issue an amended license listing the Los Lunas and Española stores as "designated distribution locations for medical cannabis" and "issue license amendments to [Ultra Health] in response to any and all past/future applications for additional distribution locations that meet the statutory criteria found in [Section] 26-2b-7(A)(6)." DOH appeals.

**DISCUSSION**

**{4}**     This case requires us to determine whether the district court erred in issuing the writ of mandamus. Such a determination turns upon whether designating new medical

---

[1]Ultra Health originally filed its petition for alternative writ of mandamus against Respondents Kenny Vigil, the then-DOH Program Manager of the New Mexico Medical Cannabis Program, and Lynn Gallagher, the then-Secretary of DOH. For the sake of clarity, this opinion refers to Respondents collectively as "DOH."
[2]The Act was amended by the Legislature in 2019. Unless otherwise specified, all citations herein are to the 2007 version of the Act because that was the version in effect when the district court ruled on the petition for writ of mandamus.

cannabis distribution locations is a "discretionary" or "ministerial" act. *Kerpan v. Sandoval Cnty. Dist. Attorney's Office*, 1988-NMCA-007, ¶ 15, 106 N.M. 764, 750 P.2d 464. DOH argues that the statutory language of the Act grants DOH discretion. It asserts the district court improperly relied solely upon the statutory provision relating to location and did not consider the Act as a whole when it concluded that DOH did not have discretion to deny the applications. In contrast, Ultra Health's position is that the Legislature did not confer DOH discretion. We hold that the writ of mandamus was properly issued because (1) Ultra Health complied with the statutory requirements set forth by the Legislature and the Act sets forth only a ministerial duty with respect to distribution locations and, (2) DOH conceded that Ultra Health had no right to an administrative appeal from a denial of an application for an amended license.

{5}     While we normally review issuance of a writ of mandamus for abuse of discretion, *State ex rel. Stapleton v. Skandera*, 2015-NMCA-044, ¶ 5, 346 P.3d 1191, in this case, we are called upon to interpret the language of the Act and DOH regulations to determine whether DOH has discretion to deny applications for amended licensure based upon additional distribution locations. Accordingly, our review is de novo. *See State ex rel. Shell W. E & P, Inc. v. Chavez*, 2002-NMCA-005, ¶ 7, 131 N.M. 445, 38 P.3d 886 (applying de novo review to statutory interpretation in reviewing a writ of mandamus and noting that "[t]he interpretation of a statute is a question of law which an appellate court reviews de novo").

{6}     In New Mexico, a writ of mandamus "applies only to ministerial duties and it will not lie when the matter has been entrusted to . . . judgment or discretion[.]" *Mimbres Valley Irrigation Co. v. Salopek*, 2006-NMCA-093, ¶ 11, 140 N.M. 168, 140 P.3d 1117. A ministerial act is "an act or thing which [a government official] is required to perform by direction of law upon a given state of facts being shown to exist, regardless of [the official's] own opinion as to propriety or impropriety of doing the act in the particular case." *State ex rel. Four Corners Expl. Co. v. Walker*, 1956-NMSC-010, ¶ 7, 60 N.M. 459, 292 P.2d 329. In contrast, an act is discretionary if it "may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it should be performed[.]" *Id.* ¶ 8.[3]

{7}     Our case law directs that "[i]n determining whether mandamus will lie, the court must look to the purpose of the statutory scheme to discover whether the duty sought to be compelled is ministerial or discretionary [and] a reasonable construction must be given rather than one which would render the statute absurd." *Kerpan*, 1988-NMCA-007, ¶¶ 14-15 (internal quotation marks and citation omitted). In construing a statute, our primary goal is "to give effect to the intent of the [L]egislature." *Dell Catalog Sales L.P. v. N.M. Tax'n & Revenue Dep't*, 2009-NMCA-001, ¶ 19, 145 N.M. 419, 199 P.3d 863 (internal quotation marks and citation omitted). In discerning legislative intent, "we look first to the plain language of the statute, giving the words their ordinary meaning[.]"

---

[3]DOH asserts that *State ex rel. Sun Co. v. Vigil*, 1965-NMSC-012, 74 N.M. 766, 398 P.2d 987, identifies additional factors bearing upon the question of whether a statutory provision is ministerial or discretionary. However we do not read *Vigil* as setting forth any additional factors that must be considered other than those set forth in our analysis.

*Flores v. Herrera*, 2016-NMSC-033, ¶ 8, 384 P.3d 1070 (internal quotation marks and citation omitted). If the plain language of the statute is clear, we refrain from further interpretation. *Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153.

**{8}**      Section 26-2B-7(A)(6)(b) is the only portion of the Act that directly addresses distribution locations. It provides that DOH shall promulgate rules for "distribution of medical cannabis to qualified patients or their primary caregivers to take place at locations that are designated by [DOH] and that are not within three hundred feet of any school, church or daycare center[.]" *Id.* It is undisputed that Ultra Health's proposed distribution locations were not within three hundred feet of any school, church or daycare center. Accordingly, Ultra Health complied with the only legislatively identified requirements set forth by the statutory language. However, DOH argues that its statutorily imposed duty to "designate" locations for the distribution of cannabis means that it may exercise its discretion when approving or disapproving applications for new locations. We disagree. The word "designate" means "to indicate and set apart for a specific purpose," "to distinguish as to class" or to "denote." *Designate*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/designate (last visited June 30, 2021). Based on these definitions, we are not persuaded that the Legislature's use of the word "designate" confers discretion on DOH when approving or disapproving applications for new locations. Rather, the language used indicates only that DOH will denote or distinguish particular buildings or facilities as medical cannabis distribution locations.[4] This interpretation is supported by the Legislature's use of alternative words in other sections of the statute that *do* confer discretion with respect to other subjects. *See State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659 (noting that "when the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional"). In contrast to the use of the word "designate[]" in Section 26-2B-7(A)(6)(b), Section 26-2B-7(A)(2) requires DOH to "*define* the amount of cannabis that is necessary to constitute an adequate supply." (Emphasis added.) Section 26-2B-7(A)(3) requires DOH to "*identify criteria and set forth procedures* for including additional medical conditions, medical treatments or diseases to the list of debilitating medical conditions that qualify for the medical use of cannabis." (Emphases added.)

**{9}**      In *Chavez*, we noted that where statutory language "*authorized* [the Secretary of the Department of Taxation and Revenue] to declare an amnesty period *of no more than* ninety days . . ." the amnesty time period was subject to discretion. 2002-NMCA-005, ¶ 9 (emphases added) (internal quotation marks and citation omitted). In contrast, we found the Secretary could not exercise discretion to selectively waive interest but not penalties as part of the amnesty program because the language of another section of the statute stated that the Secretary may waive "during the amnesty period only, the

---

[4]Ultra Health persuasively argues that other uses of the word "designate" by the Legislature do not confer discretion. *See, e.g.*, NMSA 1978, § 66-7-352.4 (2010) (requiring parking lots to have "designated and maintained accessible parking spaces for persons with significant mobility limitation"); NMSA 1978, § 14-2-7 (2011) ("Each public body shall designate at least one custodian of public records."). In neither statutory scheme do government officials pass judgment upon or approve of the qualities of the parking space nor of the records custodian.

interest and penalty provisions." *Id.* ¶¶ 3, 10. We noted that "[h]ad the [L]egislature intended to give the Secretary a choice of paragraphs to which the waiver would apply, it would have said so, just as it gave the Secretary the discretion to decide the length of the program." *Id.* ¶ 10. Similarly, here, the sole use of the verb "designate" in the statutory text dealing with distribution locations, along with the omission of words and phrases such as "define criteria for," "evaluate," "approve," "determine," or similar such language that bestows a responsibility for substantive evaluation, indicates the Legislature's intent to withhold discretion in this particular area. *See id.* ¶¶ 9-10.

**{10}** Nevertheless, DOH asks us to look beyond the narrow section of the Act dealing with distribution locations and consider the surrounding text in accordance with the rule of statutory construction that a court must "read an act in its entirety and construe each part in order to produce a harmonious whole." *Tenneco Oil Co. v. N.M. Water Quality Control Comm'n*, 1987-NMCA-153, ¶ 12, 107 N.M. 469, 760 P.2d 161, *superseded by statute on other grounds as stated in N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 19, 141 N.M. 41, 150 P.3d 991. DOH notes that under Section 26-2B-7(A) it is charged with "promulgat[ing] rules . . . to implement the purpose of the . . . Act,", which "is to allow the beneficial use of medical cannabis in a regulated system for alleviating symptoms caused by debilitating medical conditions and their medical treatments." Section 26-2B-2. DOH contends that the use of the phrase "in a regulated system" indicates that the Legislature intended to defer to DOH, and its expertise, in implementing the Act. Even if we assume the Legislature did grant DOH broad authority to implement the Act's provisions, we nevertheless reject the argument that this general grant supersedes the Legislature's restrictive use of the word designate in the specific section of the Act dealing with distribution locations. *See Stinbrink v. Farmers Ins. Co. of Ariz.*, 1990-NMSC-108, ¶ 10, 111 N.M. 179, 803 P.2d 664 (stating that "a statute dealing with a specific subject will be considered an exception to, and given effect over, a more general statute"); *see also El Dorado at Santa Fe, Inc. v. Bd. of Cnty. Comm'rs*, 1976-NMSC-029, ¶¶ 3, 12-13, 89 N.M. 313, 551 P.2d 1360 (rejecting an argument that the general "power and authority to regulate the orderly development of any subdivision . . . in a manner which will promote the best interests and for the general benefit and welfare of all residents" granted a county the authority to deny an application for approval of a plat where the applicant met all statutory requirements (internal quotation marks omitted)). DOH further notes that more specific sections of the Act authorize it to "define the amount of cannabis that is necessary to constitute an adequate supply," Section 26-2B-7(A)(2), and "identify requirements for the licensure of producers and cannabis production facilities, . . . and set forth procedures to obtain licenses[.]" Section 26-2B-7(A)(5).[5] We are not persuaded that any of the sections DOH

---

[5]DOH also argues that "recent amendments have further clarified that the [L]egislature intended to confer the authority to DOH to promulgate regulations setting forth the criteria DOH may consider when designating new or additional dispensary locations." Absent any indication that the Legislature intended this change to apply retroactively, the amendment has no bearing on this case. *See Minero v. Dominguez*, 1985-NMCA-100, ¶ 6, 103 N.M. 551, 710 P.2d 745 ("It is presumed that a statute will operate prospectively only, unless a legislative intention to give it retroactive effect is clearly apparent."). In addition, DOH does not cite to any authority in support of its argument that we should construe the Legislature's amendment of the statute as an indication that it always intended to grant DOH the authority to promulgate rules and regulations regarding the criteria DOH can consider when designating new or

cites grants or even suggests and intention to establish DOH discretion with respect to distribution locations. Instead, they relate to distinct licensing requirements, and we "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." *Regents of the Univ. of N.M v. N.M Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401 (internal quotation marks and citation omitted).[6,7]

**{11}** Finally, DOH's stipulation that a lack of an appeal from a denial of a petition to open a new distribution location favors the district court's finding that the writ of mandamus was properly issued. The district court concluded based on DOH's statements in a prior administrative appeal, and DOH's statements at a hearing in this case, that no route of appeal exists from a denial of a producer's application to open a new distribution location. By statute, a writ of mandamus "shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law." NMSA 1978, § 44-2-5 (1884). On appeal, DOH now contends that the prior administrative appeal is irrelevant because the parties stipulated only that there was no right of appeal, not that DOH did not have discretion when determining whether to designate a new distribution location. While the absence of an administrative right to appeal may not be dispositive of the question of whether an agency action is ministerial or discretionary, we nonetheless disagree. In *National Education Association of New Mexico v. Santa Fe Public Schools*, 2016-NMCA-009, ¶ 23, 365 P.3d 1, we concluded that where the "[p]etitioners had no other adequate, speedy remedy at law[,] mandamus was properly granted." Here as well, the lack of appeal or other speedy remedy at law supports the district court's granting of mandamus relief.

**{12}** We remain cognizant of the fact that "[m]andamus is a drastic remedy to be invoked only in extraordinary circumstances." *Brantley Farms*, 1998-NMCA-023, ¶ 12. Nevertheless, Ultra Health complied with the statutory requirements set forth by the

---

additional dispensary locations, and this Court will not consider propositions that are unsupported by citation to authority. *See ITT Educ. Servs., Inc. v. Tax'n & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969.

6DOH further argues that an interpretation of the Act resulting in the conclusion that the Legislature intended to deprive DOH discretion over distribution locations is absurd and should be rejected. We are unpersuaded. Our case law demonstrates that we diverge from the plain meaning of a statute to avoid an absurd result only when it is clear that the legislature "did not intend" the result, *Compton v. Lytle*, 2003-NMSC-031, ¶ 11, 134 N.M. 586, 81 P.3d 39, *superseded by statute as stated in State v. Tafoya*, 2010-NMSC-019, 148 N.M. 391, 237 P.3d 693, or where "an adherence to the literal use of words would lead to injustice, absurdity or contradiction[.]" *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 3, 117 N.M. 346, 871 P.2d 1352 (internal quotation marks and citation omitted). In this case, DOH has not explained why a literal reading of the statutory language renders an absurd, unjust, contradictory, or unintended result, and "[w]e must assume that the [L]egislature chose its words advisedly to express its meaning unless the contrary intent clearly appears." *Varoz v. N.M. Bd. of Podiatry*, 1986-NMSC-051, ¶ 9, 104 N.M. 454, 722 P.2d 1176 (alterations, internal quotation marks, and citation omitted).

7DOH urges us to look at its promulgated regulations, arguing that the distribution system it developed reflects a discretionary process. We decline to look past the statute itself and examine DOH's regulations. "Mandamus is appropriate to compel the performance of a statutory duty . . . when that duty is clear and indisputable." *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998-NMCA-023, ¶ 16, 124 N.M. 698, 954 P.2d 763. The plain language of the statute does not confer DOH discretion to deny applications for new distribution locations which meet the statutory requirements, and if the plain language of the statute is clear, we refrain from further interpretation. *Sims*, 1996-NMSC-078, ¶ 17.

Legislature, the Act sets forth only a ministerial duty with respect to distribution locations, and DOH has conceded that Ultra Health had no administrative right of appeal from a denial of an application for an amended license. Accordingly, we hold that the writ of mandamus was properly issued.

**CONCLUSION**

**{13}** We affirm.

**{14} IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**